**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**

**VERSUS**

**JASON BROWN**

**CRIMINAL ACTION**

**NO. 21-25-JWD-RLB**

**RULING AND ORDER**

Before the Court is a *Motion to Dismiss Indictment Due to Violation of the Speedy Trial Act and the Sixth Amendment Right to a Speedy Trial* ("*Motion to Dismiss*" or "*Motion*") filed by Defendant Jason Brown. (Doc. 86.) The Government opposes the *Motion*. (Doc. 90.) Oral argument was held on February 15, 2024. (Doc. 98.) The Court has carefully considered the law, the arguments, and the submissions of the parties and is prepared to rule. For the following reasons, Defendant's *Motion* is denied.

### I.    PROCEDURAL HISTORY

On April 22, 2021, Jason Brown and his co-defendant Misty Campbell were indicted in the United States District Court for the Middle District of Louisiana for conspiracy to produce, use, and traffic in counterfeit access devices in violation of 18 U.S.C. § 371 and possession of fifteen or more counterfeit access devices in violation of 18 U.S.C. § 1029(a)(3). (Doc. 1.) On that date, Brown was also indicted for illegal possession of device making equipment in violation of 18 U.S.C. § 1029(a)(4). (*Id.*) Brown was arrested in the North District of Illinois on April 29, 2021, (Doc. 4 at 4) and made his initial appearance in the Middle District of Louisiana on May 20, 2021, (Doc. 9).

Campbell was arrested in Arizona on June 25, 2021. (Doc. 13.) On June 28, 2021, she made an initial appearance in the District of Arizona (Phoenix Division) and was committed to the

Middle District of Louisiana. (Doc. 14.) The United States Marshal's Service attempted to transport Campbell to the Middle District of Louisiana but was unsuccessful due to the Covid-19 pandemic; Campbell's transport was scheduled for July 22, 2021, but had to be cancelled due to her being in quarantine until July 26, 2021. (Doc. 90-1.) On August 13, 2021, the Government moved to dismiss the indictment as to Campbell after learning that she pled guilty to state court charges stemming from the same acts or transactions that led to her federal indictment. (Doc. 20.) The Court granted the Government's motion that same day. (Doc. 21.)

On August 29, 2021, Hurricane Ida made landfall in Louisiana. *See* General Order No. 2021-7, LAMD Suspends All Deadlines in Response to Hurricane Ida, La. M.D. (2021). The Governor of Louisiana issued a state of emergency on August 26, 2021. *Id.* As a result of this state of emergency, Chief Judge of the Middle District of Louisiana Shelly D. Dick issued General Order No. 2021-7 on September 2, 2021. *Id.* This general order suspended all pending deadlines for 30 days, beginning from August 26, 2021, when the Governor issued the state of emergency. *Id.*

On September 13, 2021, the Court set Brown's trial for October 20, 2021. (Doc. 24.) Four days later on September 17, 2021, Brown filed a motion to substitute counsel. (Doc. 25.) The Court granted Brown's motion to substitute counsel on September 20, 2021. (Doc. 26.) On September 24, 2021, Brown filed a motion to continue trial, which the Court granted on September 27, 2021. (Docs. 27, 28.) Brown then filed an unopposed motion to modify conditions of release on October 25, 2021, which the Court granted on October 27, 2021. (Docs. 29, 30.) The Court held a status conference on December 16, 2021, where it reset Brown's trial date to April 4, 2022. (Doc. 32.)

On February 1, 2022, Brown filed a motion for leave to file an out of time motion to suppress, which the Court granted on February 2, 2022. (Docs. 33, 34.) Brown then filed his motion

to suppress on February 2, 2022. (Doc. 35.) The Court set the motion for hearing on April 7, 2022, and continued the April 4, 2022 trial. (Doc. 34.)

The Government filed a motion to continue the deadline for its response to Brown's motion to suppress on February 22, 2022. (Doc. 36.) Before the Court ruled on the Government's motion, it filed its response to Brown's motion to suppress on March 7, 2022. (Doc. 37.) Thus, the Court denied the Government's motion to continue the deadline for its response to Brown's motion to suppress as moot. (Doc. 41.)

On March 22, 2022, the Government filed an unopposed motion to continue the April 7, 2022 hearing. (Doc. 38.) The Court granted this motion on March 23, 2022, and reset the hearing for May 10, 2022. (Doc. 39.) Then, on April 13, 2022, the Court continued the May 10, 2022 hearing and reset it for July 7, 2022. (Doc. 40.) On April 26, 2022, Brown filed an unopposed motion to continue the July 7, 2022 hearing, which the Court granted on April 27, 2022, resetting the hearing for August 4, 2022. (Docs. 42, 43.) On July 14, 2022, the Government filed a motion to continue the August 4, 2022 hearing. (Doc. 44.) The Court granted the Government's motion on July 15, 2022, and reset the hearing for September 1, 2022. (Doc. 45.) On August 19, 2022, the Government again filed a motion to continue the hearing after learning that Brown had been arrested for an unrelated state court matter. (Doc. 46.) The Court granted the Government's motion on August 22, 2022, and held a status conference with the parties on October 4, 2022. (Docs. 47, 52.)

Prior to the status conference, Brown filed a motion to substitute counsel on October 3, 2022. (Doc. 50.) The Court granted Brown's motion on October 4, 2022. (Doc. 51.) At the October 4, 2022 status conference, the Court reset the motion to suppress hearing for December 8, 2022. (Doc. 52.) On November 23, 2022, the Government filed a Petition for Writ of Habeas Corpus ad

prosequendem, which the Court granted on November 30, 2022. (Docs. 53, 56.) The Government on November 28, 2022, then filed a motion to continue the December 8, 2022 hearing. (Doc. 54.) The Court granted the Government's motion on November 29, 2022, resetting the hearing for January 19, 2023. (Doc. 55.) On January 13, 2023, the Court reset the hearing to March 1, 2023, and on February 27, 2023, the Court again reset the hearing for April 26, 2023. (Docs. 58, 59.)

The motion to suppress hearing took place on April 26, 2023. (Doc. 61.) At the hearing, the Court ordered that once the transcript of the hearing was filed into the record, the parties had 21 days to file simultaneous post-hearing briefs and 14 days thereafter to file reply briefs. (Doc. 62.) The parties filed post-hearing memoranda on June 8, 2023 (Docs. 65, 66), and Brown filed a post-hearing reply memorandum on June 22, 2023. (Doc. 67.) The Court denied Brown's motion to suppress on July 24, 2023 (Doc. 68 at 28) and on July 25, 2023, set Brown's trial for September 25, 2023. (Doc. 69.)

On August 3, 2023, Brown filed an unopposed motion to continue trial, which the Court granted that next day, resetting trial for October 31, 2023. (Docs. 70, 71.) On September 21, 2023, Brown filed another unopposed motion to continue trial as well as a pro se motion to appoint new counsel. (Docs. 73, 75.) The Court granted Brown's motion to continue trial on September 22, 2023. (Doc. 74.) On October 11, 2023, Brown filed three pro se motions: a motion for reconsideration, (Doc. 79), a motion to appoint counsel, (Doc. 80), and a motion to compel the disclosure of evidence favorable to accused pursuant to Federal Rule of Criminal Procedure 16, (Doc. 81). The Court held a hearing on October 19, 2023, to address Docs. 75, 79, 80, and 81. (Doc. 83.) At the hearing, the Court granted Brown's motions to appoint new counsel, (Docs. 75, 80), and denied his remaining pro se motions, (Docs. 79, 81), without prejudice to his newly appointed counsel refiling those motions. (Doc. 83.)

On December 12, 2023, the Court held a status conference with the parties and set trial for January 10, 2024. (Doc. 85.) At the status conference, the defense informed the Court that Brown believed there may have been a speedy trial violation. (*Id.*) On December 21, 2023, Brown filed the instant *Motion to Dismiss*. (Doc. 86.) The Government filed an opposition to Brown's *Motion to Dismiss* on December 29, 2023. (Doc. 90.) The Court set the *Motion to Dismiss* for hearing on February 15, 2024, and continued the January 10, 2024 trial, noting that it would be rescheduled, if necessary, after the Court addressed the *Motion to Dismiss*. (Doc. 93.)

At the February 15, 2024 hearing, the Defendant raised two new issues: (1) whether co-defendant Campbell should have made her initial appearance in the Middle District of Louisiana via Zoom; and (2) whether co-defendant Campbell is now an unavailable witness in light of her dismissal. (Doc. 98 at 1–2.) The Court then ordered the parties to file simultaneous briefs within 14 days of the hearing to address these new issues. (*Id.*) The Government filed its brief on February 29, 2024. (Doc. 99.) On March 1, 2024, the Defendant filed a motion for leave to file his post hearing memorandum. (Doc. 100.) The Court granted the Defendant's motion on March 6, 2024, and the Defendant filed his post hearing brief that same day. (Docs. 103, 104.)

On March 25, 2024, the Government filed a notice of its intent to offer Rule 404(b) evidence against the Defendant. (Doc. 106.) That next day on March 26, 2024, the Court alerted the parties that all motions in limine should be filed on or before April 5, 2024. (Doc. 109.) On April 5, 2024, the Government filed a motion for pre-trial determination of authenticity and notice of intent to offer self-authenticating records. (Doc. 110.) Later that day, the Defendant filed a motion for extension of time to file a motion in limine regarding the Government's intent to offer 404(b) evidence, which the Court granted on April 8, 2024. (Docs. 111, 112.)

## II.    LEGAL STANDARD

### A.  Speedy Trial Act

"The Speedy Trial Act requires commencement of trial within seventy non-excludable days of the information or indictment, or when the defendant first appears before the court, whichever is later." *United States v. Parker*, 505 F.3d 323, 326 (5th Cir. 2007) (citing 18 U.S.C. § 3161(c)(1) ("In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.")).

18 United States Code § 3161(h) enumerates excludable actions that suspend this seventy-day clock:

> **(h)** The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
>> **(1)** Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
>>
>> ***
>>
>>> **(D)** delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
>>>
>>> **(E)** delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure;
>>>
>>> **(F)** delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such

6

transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable;

\*\*\*

**(H)** delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

\*\*\*

**(6)** A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.

**(7)(A)** Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h).

When granting a continuance pursuant to 18 U.S.C. § 3161(h)(7), the Court shall consider

the following factors:

**(i)** Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

**(ii)** Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

**(iii)** Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period

7

specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.

**(iv)** Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B). Further, the Court shall not grant a continuance under 18 U.S.C. § 3161(h)(7) "because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." *Id.* at § 3161(h)(7)(C).

When determining when the speedy trial clock is tolled, Fed. R. Crim. P. 45(a)(1)(A) provides that the Court must exclude the day of the event triggering the period. Further, the Court must include the last day of the period, but if the last day of the period is a Saturday, Sunday, or legal Holiday, the period continues until the end of the next day that is not a Saturday, Sunday, or legal holiday. *Id.* at (a)(1)(C). The Fifth Circuit has held that with respect to excluding days pursuant to 18 U.S.C. § 3161(h)(1)(D), the actual filing date of a motion and the date of the court's disposition are excluded from the Speedy Trial Act calculation. *See United States v. Johnson*, 29 F.3d 940, 943 n.4 (5th Cir. 2010) (citing *United States v. Kington*, 825 F.2d 1091, 1107 (5th Cir. 1994)).

### B. Sixth Amendment Right to Speedy Trial

Criminal defendants have a right to a speedy trial under the Sixth Amendment of the United States Constitution. U.S. Const. amend. VI. The United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 522 (1972) explained that one's right to a speedy trial "is necessarily relative. It is consistent with delays and depends upon circumstances." Further, the Court in *Barker* set forth

four factors to analyze when addressing Sixth Amendment claims: "(1) length of the delay, (2) the reason for [it], (3) the defendant's diligence in asserting his Sixth Amendment right, and (4) prejudice to the defendant resulting from the delay." *United States v. Hernandez*, 457 F.3d 416, 420 (5th Cir. 2006) (alteration in original) (quoting *United States v. Cardona*, 302 F.3d 494, 496 (5th Cir. 2002)).

"Where, as here, more than one year has passed, this court undertakes a full *Barker* analysis, *id.*, looking to the first three factors to decide whether prejudice will be presumed, *id.* at 421." *Parker*, 505 F.3d at 328 (citing *Hernandez*, 457 F.3d at 420–21). " 'Prejudice may be presumed where the first three factors weigh "heavily" in the defendant's favor.' " *Id.* (quoting *Hernandez*, 457 F.3d at 421). "Otherwise, he must demonstrate actual prejudice." *Id.*

### III. DISCUSSION

#### A. Speedy Trial Act Calculation

##### 1. Parties' Arguments

In his *Motion to Dismiss*, Brown argues that the speedy trial clock began on July 8, 2021. (Doc. 86-1 at 2.) He explains that pursuant to 18 U.S.C. § 3161(h)(F), Campbell should have been transported to the Middle District within 10 days of June 28, 2021, which was the date the Arizona Magistrate Judge committed Campbell to the Middle District. (*Id.*) The next event that stopped the speedy trial clock was Brown's motion to substitute counsel on September 17, 2021. (*Id.*) According to Brown, 70 days ran on the speedy trial clock from July 8, 2021, to September 17, 2021. (*Id.*) The Court granted Brown's motion to substitute counsel on September 20, 2021, and the speedy trial clock began to run again until Brown's motion to continue trial on September 24, 2021. (*Id.*) Thus, three more days elapsed on the speedy trial clock, bringing the total number of days to 73. (*Id.*) Brown also argues that the continuances of the motion to suppress hearing

spanning from March 22, 2022, to February 27, 2023, should be included in the speedy trial calculation as well because these continuances were not supported by an ends-of-justice analysis pursuant to 18 U.S.C. 3161(h)(7)(A). (*Id.* at 3–4.) Therefore, according to Brown, the indictment against him should be dismissed because the delay in his trial exceeds 70 non-excludable days and thus is in violation of the Speedy Trial Act. (*Id.* at 5.)

In opposition, the Government argues that Brown's speedy trial clock did not start until August 14, 2021, the day after the indictment as to his co-defendant Campbell was dismissed. (Doc. 90 at 9.) According to the Government, "in the case of a multi-defendant prosecution, the speedy trial clock does not begin to run until the last co-defendant makes his initial appearance before a judicial officer of the court in which the charge is pending." (*Id.* at 10 (emphasis omitted) (citing 18 U.S.C. § 3161(h)(6); *United States v. Franklin*, 148 F.3d 451, 455 (5th Cir. 1998); *United States v. Harris*, 566 F.3d 422, 428 (5th Cir. 2009)).) The Government rejects Brown's argument that any delay resulting from the transportation of a co-defendant in excess of 10 days should not be excluded. (*Id.* at 11.) Since the speedy trial clock did not start until August 14, 2021, the day after Campbell's indictment was dismissed, any provision excluding periods of delay before August 13, 2021, is inapplicable because the speedy trial clock had not started yet. (*Id.*)

The Government then goes on to argue that the speedy trial clock was suspended from August 26, 2021, to September 27, 2021, pursuant to General Order No. 2021-7. (*Id.* at 12.) Likewise, the speedy trial clock was suspended from September 28, 2021, to April 4, 2022, pursuant to Brown's ends-of-justice trial continuance. (*Id.*) Further, February 1, 2022, through July 24, 2023, is excludable due to the various delays associated with Brown's motion to suppress. (*Id.* at 13.)

The Government disputes Brown's argument that the continuances related to his motion to suppress are not excludable because they were not supported by an ends-of-justice analysis pursuant to 18 U.S.C. 3161(h)(7)(A). (*Id.*) The Government argues that while an ends-of-justice analysis is needed for a trial continuance, such is not the case for a motion hearing continuance. (*Id.*)

Lastly, the Government asserts that between the Court ruling on Brown's motion to suppress on July 25, 2023, and Brown filing a motion to continue trial on August 3, 2023, eight days accrued towards Brown's speedy trial calculation, brining the total number of excludable days to 24. (*Id.* at 14.) According to the Government, since August 3, 2023, no days have continued to accrue, and thus there has been no Speedy Trial Act violation to warrant a dismissal of Brown's indictment. (*Id.*)

At the February 15, 2024 hearing, Brown raised the additional argument that pursuant to the CARES Act, Campbell's initial appearance should have been conducted via Zoom; however, the Government refutes this argument by asserting that for an initial appearance to be held via video, the defendant must consent to doing so, which Campbell did not do. (*See* Docs. 104 at 3, 99 at 5–6.) Moreover, Brown raises in post-hearing briefing that General Order No. 2021-7's time delay in relation to Hurricane Ida is not excludable because the Court issued notices "regarding conference and hearings in other cases as early as September 3, 2021." (Doc. 104 at 4.) Likewise, there were docket entries in the present case during the time General Order No. 2021-7 was in effect, which, according to Brown, further supports that "there was not an interruption in the conduct of this case that necessitated stopping the speedy trial clock." (*Id.*)

### 2. *Analysis*

a. Brown's Speedy Trial Clock Began on August 14, 2021

The Court agrees with the Government that Brown's speedy trial clock did not begin until August 14, 2021, the day after Campbell's indictment was dismissed. "As the Supreme Court and the Fifth Circuit have made clear, when construing a statute, courts 'must first determine whether the statutory text is plain and unambiguous' and if it is, the statute must be applied 'according to its terms.' " *United States v. Briscoe*, No. 20-298, 2023 WL 5835421, at *2 (E.D. Tex. Sept. 8, 2023) (quoting *Carcieri v. Salazar*, 555 U.S. 379 (2009)) (citing *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004); *United States v. Sharp*, 62 F.4th 951, 953 (5th Cir. 2023)).

Under the clear language of 18 U.S.C. § 3161(c)(1),

> [T]he trial of a defendant charged in an . . . indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the . . . indictment, or from the date the defendant has *appeared before a judicial officer of the court in which such charge is pending*, whichever date last occurs.

*Id.* (emphasis added). In a case with multiple defendants, the speedy trial clock does not begin to run until the last co-defendant has made an initial appearance. *See* 18. U.S.C. § 3161(h)(6); *United Franklin*, 148 F.3d at 455; *Harris*, 566 F.3d at 428. *See also Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986) ("All defendants who are joined for trial generally fall within the speedy trial computation of the latest codefenadnt . . . . [T]heir 70-day period [is] measured with respect to his.") Therefore, applying the Speedy Trial Act according to its terms, it is clear from the plain and unambiguous statutory text that when there are co-defendants, the speedy trial clock does not begin to run until the last co-defendant makes an initial appearance before a judicial officer of the court in which the charges are pending.

In this case, Brown made his initial appearance in the Middle District of Louisiana on May 20, 2021. (Doc. 9.) Though his speedy trial clock would normally have begun on May 20, 2021, in this multi-defendant case, Brown's speedy trial clock was to begin on the date Campbell made her initial appearance in the Middle District of Louisiana. Given that Campbell never made her initial appearance in the Middle District of Louisiana, Brown's speedy trial clock began on August 14, 2021, the day after Campbell's indictment was dismissed. *See* Fed. R. Crim. P. 45(a)(1)(A).

At the February 15, 2024 hearing, Brown raised the argument that pursuant to the CARES Act, co-defendant Campbell's initial appearance could and should have been conducted via Zoom, just as Brown's initial appearance was conducted. (Doc. 104 at 3.) However, as the Government correctly notes, Campbell's initial appearance in the Middle District could not have been conducted via Zoom unless she consented to doing so. *See, e.g.*, Fed. R. Crim. P. 5(g), 10(c); Doc. 99 at 5–6. Therefore, the Court is not persuaded by Defendant's argument.

    b.  <u>Thirteen Days Elapsed on the Speedy Trial Clock Before it was Suspended on August 26, 2021</u>

Chief Judge of the Middle District Shelly D. Dick's General Order No. 2021-7 suspended Speedy Trial Act deadlines for a period of 30 days in response to Hurricane Ida and the Governor's State of Emergency Declaration. *See* General Order No. 2021-7, LAMD Suspends All Deadlines in Response to Hurricane Ida, La. M.D. (2021). In the General Order, Judge Dick articulated "that extraordinary circumstances exist such that the interests of justice are served, and the interests of the public and of the criminal defendants affected are outweighed, by a temporary exclusion of all criminal cases from the time requirements of the Speedy Trial Act, 18 U.S.C. § 3161." *Id.* The Fifth Circuit has held that the interests of justice are served by continuing a criminal trial in response to a public emergency. *See, e.g.*, *United States v. Scott*, 245 F. App'x 391, 394 (5th Cir. 2007) (delays in response to Hurricane Katrina excluded from Speedy Trial Act calculations). *See*

*also* 3B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 835 (4th ed. 2023) ("Two circuits—the Sixth and Ninth—found the 'ends of justice' may be properly invoked to delay jury trials during the COVID-19 pandemic.").

Accordingly, the Court does not find Defendant's argument persuasive that because the Court issued notices regarding conferences and hearings in *other* cases, not the instant case, as early as September 3, 2021, General Order No. 2021-7 did not suspend his speedy trial clock. (*See* Doc. 104 at 4.) Further, Defendant has not cited any authority to support the proposition that because there was some activity in his case General Order No. 2021-7 did not suspend his speedy trial clock. (*See id.*) Therefore, the Court finds that General Order No. 2021-7 did suspend Defendant's speedy trial clock.

Under General Order No. 2021-7, the suspension of the speedy trial clock began on August 26, 2021. From August 14, 2021, when Brown's speedy trial clock began, to August 26, 2021, when his speedy trial clock was suspended, 13 days elapsed on Brown's speedy trial clock.

c.  <u>No Time Accrued on the Speedy Trial Clock from August 26, 2021, to September 27, 2021.</u>

General Order No. 2021-7 was set to expire 30 days from August 26, 2021. Thirty days from August 26, 2021, was September 25, 2021. Given that September 25, 2021, was a Saturday, General Order No. 2021-7 was set to expire on September 27, 2021. *See* Fed. R. Crim. P. 45(a)(1)(C).

Though at the time Brown's speedy trial clock was already suspended due to General Order No. 2021-7, Brown's speedy trial clock would have also been suspended on September 17, 2021, when he filed his motion to substitute counsel. (Doc. 25.) *See* 18 U.S.C. § 3161(h)(1)(D). The Court granted Brown's motion to substitute counsel on September 20, 2021. (Doc. 26.) Had Brown's speedy trial clock not already been suspended by General Order 2021-7, the Court's grant

of Brown's motion to substitute counsel would have resumed the speedy trial clock on September 21, 2021 (the day after the Court's order). *See* 18 U.S.C. § 3161(h)(1)(D).

      d.   <u>An Ends-of-Justice Continuance Warrants September 28, 2021, to April 4, 2022, to be Excluded from the Court's Speedy Trial Act Calculation.</u>

Following the Court's grant of Brown's motion to substitute counsel, Brown filed a motion to continue trial on September 24, 2021, in which he stated that his new counsel needed "additional time to familiarize himself with the case and effectively handle representation of Brown." (Doc. 27 at 3.) The Court granted this continuance on September 27, 2021, in which it stated the following:

> The Court finds failure to grant the requested continuance "would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." *See* 18 U.S.C. § 3161(h)(7)(B)(iv). Further, it is the finding of this Court, after an "ends of justice" analysis pursuant to the provisions of 18 U.S.C. § 3161(h)(7), that the ends of justice served by the granting of this continuance outweigh the best interests of the public and the defendant in a speedy trial.

(Doc. 28.) At the December 16, 2021, status conference, the Court then reset trial for April 4, 2022. (Doc. 32.)

Since the Court, in compliance with 18 U.S.C. § 3161(h)(7), granted a continuance of trial at the Defendant's request, the period occasioned by this delay, September 28, 2021, to April 4, 2022, is excluded from Brown's Speedy Trial Act calculation. *See, e.g.*, *United States v. Dignam*, 716 F.3d 915, 924 (5th Cir. 2013) ("Because it was unclear how much time Bertucci would need to recover, and because the seven-month delay was not extreme and did not prejudice Dignam, we conclude that the district court's grant of an open-ended continuance was reasonable. Thus, the 70–day speedy trial clock was tolled between April 19, 2010, the date Dignam first moved to continue the trial, and February 28, 2011, the trial date set under the second continuance, under 18

U.S.C. § 3161(h)(7).”). *See also* 3B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 835 (4th ed. 2023) (“The broadest of the provisions allowing for exclusion of time is 18 U.S.C.A. § 3161(h)(7). It excludes the delay resulting from a continuance granted by the judge on the basis of his finding that the ends of justice served by taking that action outweigh the best interest of the public and the defendant in a speedy trial.”).

From September 28, 2021, to April 4, 2022, there were other motions filed that also would have suspended Brown's speedy trial clock had it not already been suspended pursuant to his requested continuance of trial, (Doc. 28). This includes (1) Brown's unopposed motion to modify conditions of release, filed on October 25, 2021, and granted on October 27, 2021 (Docs. 29, 30); (2) Brown's motion for leave to file an out of time motion to suppress, filed on February 1, 2022, and grated on February 2, 2022 (Docs. 33, 34); and (3) Brown's motion to suppress, filed on February 2, 2022 (Doc. 35). Ultimately, delays occasioned by Brown's motion to suppress went beyond April 4, 2022, and will be discussed further below.

e.  <u>Brown's Speedy Trial Clock Remained Suspended until July 25, 2023.</u>

In granting Brown's motion for leave to file an out of time motion to suppress, the Court set the motion for hearing on April 7, 2022, thus continuing the April 4, 2022 trial and rescheduling it for a time after the pending motion to suppress was addressed. (Doc. 34.) As explained above, there were multiple motions to continue the motion to suppress hearing spanning from March 22, 2022, to when the hearing ultimately took place on April 26, 2023. Brown argues that since these continuances were granted without an ends-of-justice analysis pursuant to 18 U.S.C. § 3161(h)(7), such time is not excludable from Brown's Speedy Trial Act calculation. (Doc. 86-1 at 3–4.) However, the Court does not find this argument persuasive.

The Speedy Trial Act does not mandate the Court to partake in an ends-of-justice analysis before granting the various continuances of the motion to suppress hearing. Subsection (h)(1)(D) of 18 U.S.C. § 3161 makes excludable "delay(s) resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." The United States Supreme Court has described the parameters of subparagraph (D) as follows:

> Subparagraph (D) does not subject all pretrial motion-related delay to automatic exclusion. Instead, it renders automatically excludable only the delay that occurs "*from the filing* of the motion through the conclusion of the hearing on, or other prompt disposition of" the motion. (Emphasis added.) In so doing, the provision communicates Congress' judgment that delay resulting from pretrial motions is automatically excludable, *i.e.*, excludable without district court findings, *only* from the time a motion is filed through the hearing or disposition point specified in the subparagraph, and that other periods of pretrial motion-related delay are excludable only when accompanied by district court findings.

*Bloate v. United States*, 559 U.S. 196, 206 (2010). Therefore, with the time Brown filed his motion to suppress to the date the hearing was held being automatically excludable under Subparagraph (D), the Court finds that it was warranted in granting continuances of the motion to suppress hearing before first conducting an ends-of-justice analysis. Therefore, this time is excluded from Brown's Speedy Trial Act calculation.

Also excluded pursuant to Subparagraph (D) is the time between the hearing and when the parties filed post-hearing briefs. *See Henderson*, 476 U.S. at 330–31. As the Fifth Circuit has explained:

> In *Henderson v. United States,* 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986), the Supreme Court addressed [the Speedy Trial Act] in some detail. With respect to [Subparagraph (H)], the Court stated that it "allows exclusions of up to 30 days while the district court has a motion 'under advisement,' *i.e.,* 30 days from the time the court receives all the papers it reasonably expects...." *Id.* at 328-29, 106 S.Ct. at 1875-76. After that thirty-day period expires, the Speedy Trial clock begins to tick, regardless of when the trial court ultimately rules on the motion.

With respect to [Subparagraph (D)], the *Henderson* Court noted that it applies in two different situations. *Id.* at 329, 106 S.Ct. at 1876. First, if a motion requires a hearing, [Subparagraph (D)] excludes the time between the filing of the motion and the hearing on that motion, even if a delay between the motion and the hearing is unreasonable. *Id.* at 329-30, 106 S.Ct. at 1876-77. Additionally, the Court concluded that [Subparagraph (D)] implicitly excludes also that time after a hearing needed to allow the trial court to assemble all papers reasonably necessary to dispose of the motion, *e.g.,* the submission of post-hearing briefs. *Id.* at 330-31, 106 S.Ct. at 1876-77. Once the court has received all submissions from counsel, it then meets the *Henderson* definition of taking the motion "under advisement." The trial court then has thirty excludable days under [Subparagraph (H)] in which to rule before the Speedy Trial clock again begins to tick.

In addition, [Subparagraph (D)] also applies in those situations where a motion does not require a hearing. If no hearing is required, [Subparagraph (D)] allows exclusionary time for a "prompt disposition" of the motion. *Id.* at 330, 106 S.Ct. at 1876. Only that time needed for a "prompt disposition," however, is excluded under [Subparagraph (D)]. The point at which time will no longer be excluded is determined by [Subparagraph (H)], which permits an exclusion of thirty days from the time a motion is actually "under advisement." *Id.* at 329, 106 S.Ct. at 1876; *United States v. Santoyo,* 890 F.2d 726, 727 (5th Cir.1989), *cert. denied,* 495 U.S. 959, 110 S.Ct. 2567, 109 L.Ed.2d 749 (1990). Thereafter, the fact that a motion is "pending," or is otherwise unresolved, does not toll the Speedy Trial clock.

*Johnson*, 29 F.3d at 942–43 (footnote omitted).[1]

As per *Johnson*, once the last post-hearing brief was filed, the Court had 30 days to rule on the motion before the speedy trial clock would resume. *See* 18 U.S.C. § 3161(h)(1)(H). The last post-hearing brief was filed on June 22, 2023. (Doc. 67.) Though 30 days from the filing of the last post-hearing brief was July 22, 2023, the date was a Saturday, so the period was extended until Monday, July 24, 2023. *See* Fed. R. Crim. P. 45(a)(1)(C). The Court denied Brown's motion to suppress on July 24, 2023. (Doc. 68.) Since the Court ruled on Brown's motion 30 days of the last post-hearing brief, this time is excludable as well under 18 U.S.C. § 3161(h)(1)(H). Brown's

---

[1] In 2008, 18 U.S.C. § 3161(h) was renumbered, "redesignating subparagraphs (D) through (J) as subparagraphs (B) through (H), respectively." Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110–406, 122 Stat. 4291.

speedy trial clock then began to run again on July 25, 2023—the day after the Court ruled on his motion to suppress.

      f.   Nine Days Elapsed on Brown's Speedy Trial Clock Between the Court Ruling on His Motion to Suppress on July 24, 2023, and his Motion to Continue Trial filed on August 3, 2023.

Brown then filed another unopposed motion to continue trial on August 3, 2023. (Doc. 70.) The filing of this motion suspended Brown's speedy trial clock. *See* 18 U.S.C. § 3161(h)(1)(D). Between July 25, 2023, when Brown's speedy trial clock began to run again (the day after the Court ruled on his motion to suppress) to August 3, 2023, when he filed his motion to continue trial, nine days accrued on Brown's speedy trial clock. Thus, in total, 22 days had accrued on Brown's speedy trial clock up until August 3, 2023.

      g.   No Time Has Accrued on Brown's Speedy Trial Clock Since August 3, 2023.

In granting Brown's motion to continue trial (Doc. 70), the Court explained:

> The Court specifically finds that the ends of justice served by taking this action outweigh the best interests of the public and defendant in a speedy trial, and that failure to grant the continuance would likely result in a miscarriage of justice and would deny the defendant and government reasonable and necessary time for preparation, taking into account the exercise of due diligence, all in accordance with 18 U.S.C. 3161 (h)(7)(A) and (B)(i) and (B)(iv).

(Doc. 71.) The Court then reset trial for October 31, 2023. *Id.* Since the Court, in compliance with 18 U.S.C. § 3161(h)(7), granted a continuance of trial at the Defendant's request, the period occasioned by this delay, August 3, 2023, to October 31, 2023, is excluded from Brown's Speedy Trial Act calculation. *See, e.g.*, *Dignam*, 716 F.3d at 924.

Brown then filed another motion to continue trial on September 21, 2023, (Doc. 73) in light of Brown's motion to appoint new counsel (Doc. 75), which Brown also filed on September 21, 2023. Though the clock was already suspended by the Court's grant of Brown's August 3, 2023

motion to continue trial (Doc. 70), Documents 73 and 75 also would have suspended Brown's speedy trial clock. *See* 18 U.S.C. § 3161(h)(1)(D).

In granting Brown's September 21, 2023 motion to continue trial, the Court noted the following:

> The Court specifically finds that the ends of justice served by taking this action outweigh the best interests of the public and defendant in a speedy trial, and that failure to grant the continuance would likely result in a miscarriage of justice, and would deny the defendant and government reasonable time necessary [] for preparation, taking into account the exercise of due diligence, all in accordance with 18 U.S.C. 3161 (h)(7)(A) and (B)(i) and (B)(iv).

(Doc. 74.) At the December 12, 2023 status conference, the Court reset Brown's trial for January 10, 2024. (Doc. 85.) Since the Court, in compliance with 18 U.S.C. § 3161(h)(7), granted a continuance of trial at the Defendant's request, the period occasioned by this delay, September 21, 2023, to January 10, 2024, is excluded from Brown's Speedy Trial Act calculation. *See, e.g.*, *Dignam*, 716 F.3d at 924.

Between September 21, 2023, and January 10, 2024, there were other events that occurred that, had the clock not already been suspended, would have also suspended Brown's speedy trial clock. Most notably, Brown filed the instant *Motion to Dismiss* on December 21, 2023, which further suspended Brown's speedy trial clock until 30 days after the filing of the last post-hearing brief. *See* 18 U.S.C. § 3161(h)(1)(D); 18 U.S.C. § 3161(h)(1)(H). [2]

---

[2] The Court notes that the last post-hearing brief was filed on March 6, 2024. (Doc. 104.) The Court then had 30 days from this date, which was April 5, 2024, to rule on Defendant's *Motion to Dismiss*. *See Johnson*, 29 F.3d at 942–43. On April 5, 2024, the Defendant filed a motion for extension of time to file a motion in limine (Doc. 111), which then further suspended the speedy trial clock until April 8, 2024, the date the Court granted the motion for extension of time, (Doc. 112). *See United States v. Tinklenberg*, 563 U.S. 647, 650 (2011) ("[T]he filing of a pretrial motion falls within [18 U.S.C. § 3161(h)(1)(D)] irrespective of whether it actually causes, or is expected to cause, delay in starting a trial.") *See also* Fern L. Kletter, Annotation, *Pretrial Motion Time Periods Excludable from Speedy Trial Time Limits Under 18 U.S.C.A. § 3161(h)(1)(D)*, § 54. *Motion for extension of time*, 88 A.L.R. Fed. 3d Art. 2 (2024) (discussing *Bloate v. United States*, 559 U.S. 196 (2010) and explaining how a "[p]retrial delay relating to the district court granting the defendant an extension of time to prepare pretrial motions constituted delay resulting from proceedings involving a pretrial motion, for purposes of 18 U.S.C.A. § 3161(h)(1)(D); however, held the United States Supreme Court, the automatic exclusion applied only to the period from the filing of the pretrial motion through the conclusion

h.   In Total, 22 days Have Accrued on Brown's Speedy Trial Clock.

When adding the 13 days that accrued on Brown's speedy trial clock from August 14, 2021, to August 26, 2021, and the 9 days that accrued from July 25, 2023, to August 3, 2023, a total of 22 non-excludable days have accrued on Brown's speedy trial clock. Since there has been less than 70 non-excludable days that have accrued on Brown' speedy trial clock, the Court finds that there has been no violation of the Speedy Trial Act in Brown's case. *See* 18 U.S.C. § 3161(c)(1). Accordingly, Brown's *Motion to Dismiss* with respect to this issue is denied.

**B. Sixth Amendment Analysis**

*1. Parties' Arguments*

Brown also argues that the delay in his trial violates his Sixth Amendment right to a speedy trial. (Doc. 86-1 at 5.) In applying the *Barker* factors, Brown asserts the following:

> [T]he delay in going to trial is approaching 3 years. Most of that delay has occurred due to the government's failure to bring to co-defendant, Misty Campbell, to this district, changing of his defense counsel several times due to retirement and conflict of interest, and multiple continuances of his suppression hearing by the government and the court.
>
> The result is that Mr. Brown has remained incarcerated far from his home in Chicago, Illinois. He receives no visits from family or friends due to the distance. He also has pending state charges in Illinois for which he cannot effectively communicate with his state court counsel. One of the critical witnesses in his federal case is his co-defendant, Misty Campbell. Her charges were dismissed by the government and her current whereabouts are unknown to the defense. A review of the indictment confirms the extensive involvement she has in the case. Mr. Brown suffers from extreme anxiety regarding his situation in jail, the separation from his family, the length of time it's taking to resolve his case, and the status of

---

of the hearing on, or other prompt disposition of, the motion"); *United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993) ("Any pretrial motion, including a motion for extension of time, is a pretrial motion within the meaning of Section [3161(h)(1)(D)] and creates excludable time, even if it does not in fact delay trial.").

the charges against him and witnesses in his case. To some extent, his anxiety has been expressed by his filing of several pro se motions as well as his past request for new counsel.

(*Id.* at 5–6.)

The Government argues that "none of the four *Barker* factors identified are either a necessary or a sufficient condition to the finding of a deprivation of the right to a speedy trial." (Doc. 90 at 14.)  Regarding the first factor of length of delay, the Government argues that since the delay has been less than five years, prejudice is not presumed. (*Id.* at 15.) However, since the delay exceeds one year, to determine if Brown has suffered prejudice, the Court must evaluate length of delay in light of the other *Barker* factors. (*Id.*)With respect to the second *Barker* factor of reasons for the delay, the Government notes that it did not fail to bring co-defendant Campbell to the Middle District. (*Id.* at 16.) Instead, Campbell's delayed transport to the Middle District was due to the Covid-19 pandemic. (*Id.*) Likewise, the Government cited valid reasons when it sought continuances of the motion to suppress hearing, including "unavailability of material witnesses and complications caused by the defendant's intervening out-of-district arrest in Illinois." (*Id.*) "In addition to his arrest, the defendant's own pretrial motions, including his motion to suppress; motions for new counsel; motions for ends of justice continuances; and other pro se motions further caused the matter to be delayed." (*Id.*) Thus, this factor does not weigh in Brown's favor. (*Id.*)

The third factor of whether Brown timely asserted his right to a speedy trial, according to the Government, also does not weigh in Brown's favor. (*Id.* at 17.) The Government asserts that Brown brought the present *Motion to Dismiss* only after his motion to suppress was denied. (*Id.*) Further, Brown consented to numerous delays and after his suppression motion was denied moved twice for a continuance of the trial. (*Id.*)

As to the final *Barker* factor of prejudice to the defendant, the Government asserts:

> The defendant cites several facts in support of his allegation: among others, he is incarcerated away from his home in Chicago; he receives no visits from family due to distance; he cannot communicate with his state court counsel; he suffers extreme anxiety due to his incarceration. All of these allegations relate to his current incarceration. The defendant fails to highlight, however, that the Government did not move for detention in this matter and did not oppose his requests to modify his conditions of pretrial release. The only reason the defendant is in custody, and has remained in custody, is because the defendant was arrested in an unrelated state court matter while under pretrial supervision of this Court.
>
> Importantly, defendant has failed to demonstrate that the delay in bringing him to trial has impaired his ability to defend himself. He would, no doubt, be hard pressed to do so, given that the most recent delays have been at his own urging.

(*Id.*) Therefore, argues the Government, there has been no violation of Brown's Sixth Amendment right to a speedy trial, and the Court should not dismiss Brown's indictment. (*Id.* at 18.)

Further, at the February 15, 2024 hearing, Brown raised the argument that he is also prejudiced by the fact that his co-defendant Campbell is now an unavailable witness. (Doc. 98 at 1; Doc. 104 at 11.) In response, the Government argues:

> In this case, the defendant loosely asserts that the delay has made it difficult for the defendant to locate Campbell for information that may be pertinent to his defense. Tr. P. 9, Ln. 1-10. This type of "impaired defense" claim before a trial has taken place is merely speculative as it is not until after trial that a court can evaluate whether prejudice was actually suffered. *See United States v. Duran-Gomez*, 984 F.3d 366, 380 (5th Cir. 2020) (citing *United States v. MacDonald*, 435 U.S. 850, 858 (1978)). In *Duran-Gomez,* the Fifth Circuit noted that "the defendant's current inability to contact someone is the type of 'speculative' argument we are wary of in pre-trial, Sixth Amendment cases." *Id.* Not only has the defendant failed to establish how Campbell is material to his defense, he admits that only "preliminary attempts" have been made to find and locate her, suggesting that even his own efforts are far from exhausted. Tr. P. 9, Ln. 2-3. Moreover, the defendant has made no effort to build on his "preliminary attempts" by discussing or coordinating with the United States, meaning that the defendant's argument is both speculative and premature until all efforts have been exhausted and the defendant establishes actual prejudice to his defense.

(Doc. 99 at 7.)

### 2. *Analysis*

"It will be the unusual case, however, where the time limits under the Speedy Trial Act have been satisfied but the right to a speedy trial under the Sixth Amendment has been violated." *United States v. Bieganowski*, 313 F.3d 264, 284 (5th Cir. 2002) (citations omitted). Again, the Court in *Barker* set forth four factors for courts to analyze when addressing Sixth Amendment claims: "(1) the length of the delay, (2) the reason for [it], (3) the defendant's diligence in asserting his Sixth Amendment right, and (4) prejudice to the defendant resulting from the delay." *Hernandez*, 457 F.3d at 420 (alteration in original) (quoting *Cardona*, 302 F.3d at 496). Since it has been over one year since Brown's indictment, a full *Barker* analysis is warranted. *Id.* at 420–21 (citing *United States v. Frye*, 372 F.3d 729, 736–37 (5th Cir. 2004)).

The first *Barker* factor of length of delay does not weigh in favor of the Defendant. Though it is going on three years since Brown's indictment, when viewing the first factor (length of delay) in light of the second factor (reason for the delay), the record shows that much of the delay in this case is from Brown's own doing. As explained above, Brown changed counsel multiple times since his indictment and sought various trial and hearing continuances.

While some delays were not from Brown's own doing, these delays do not prejudice him. The United States Supreme Court has explained that "*Barker* stressed that official bad faith in causing delay will be weighed heavily against the government, 407 U.S., at 531, [] and a bad-faith delay the length of this negligent one would present an overwhelming case for dismissal." *United States v. Doggett*, 505 U.S. 647, 656 (1992). But such is not the case here. The delays associated with his co-defendant Campbell were due to the Covid-19 pandemic, and the delays sought by the Government were due in part to issues arising out of Defendant's out-of-district arrest. (*See* Docs.

46, 90-1.) Accordingly, the Court does not find the first and second *Barker* factors weigh in Brown's favor.

Nor does the Court find the third *Barker* factor to weigh in Defendant's favor. Brown was not diligent in asserting his Sixth Amendment right. He argues that his Sixth Amendment right has been violated because of the delays occasioned by the transportation of his co-defendant Campbell and continuances granted with respect to his motion to suppress, but Brown brings up these issues only after his motion to suppress was denied. Over two and a half years passed from the time of his indictment before Brown raised a speedy trial issue. During that time, Brown made affirmative indications to the Court that he did not want his trial to proceed through filing multiple motions for continuances. Under these facts and circumstances, the Court does not find this factor to weigh in Brown's favor. *See Parker*, 505 F.3d at 329–30 ("Mere assertion of the speedy trial right is not enough for this factor to weigh in a defendant's favor. If he waits too long, his pre-assertion silence will be weighed against him. We have set no absolute limit on the amount of time that must pass before a defendant raises a claim; instead we look to the totality of the proceedings.")

In light of these first three factors, the Court finds that the delay in Brown's trial has not prejudiced him. Since the first three factors do not weigh in Brown's favor, prejudice is not presumed in this case, and thus Brown must prove actual prejudice. *See Parker*, 505 F.3d 330. " 'Actual prejudice' is assessed in light of the three following interests of the defendant: (1) 'to prevent oppressive pretrial incarceration'; (2) 'to minimize anxiety and concern of the accused'; and (3) 'to limit the possibility that the defense will be impaired.' " *Harris*, 566 F.3d at 433 (quoting *Barker*, 407 U.S. at 532).

The Court finds that Brown has failed to meet his burden of proving actual prejudice in this case. While the Defendant may suffer from anxiety because he is currently incarcerated outside

his home state and away from family, he was originally released on conditions and is only currently incarcerated because he was arrested for an unrelated state court matter while under this Court's pretrial supervision. (*See* Docs. 9, 46). Moreover, the Government did not oppose Brown's request to modify the conditions of his pretrial release (Doc. 29), and Brown has failed to adequately address in his *Motion to Dismiss* how the various delays in his case have impaired his ability to defend himself.

Specifically, the Court does not find that Brown has met his burden of proving that Campbell is an unavailable witness and that this unavailability has prejudiced him. Despite the Court ordering Brown to brief this issue, all Brown included in his post-hearing brief as to this issue was the following: "One of the critical witnesses in his federal case is his co-defendant, Misty Campbell. Her charges were dismissed by the government and her current whereabouts are unknown to the defense. A review of the indictment confirms the extensive involvement she has in the case." (Doc. 104 at 11.) Alleging that someone is an unavailable witness without anything more to support that unavailability is a speculative argument that will not warrant the Court to grant a Motion to Dismiss for violation of a Defendant's Sixth Amendment right to a speedy trial. *See, e.g.*, *United States v. Duran-Gomez*, 984 F.3d 366, 380 (5th Cir. 2020).

For these reasons, the Court finds that Brown's Sixth Amendment right to a speedy trial has not been violated as per the analysis the Supreme Court set forth in *Barker*. Thus, Brown's *Motion to Dismiss* with respect to this issue is also denied.

IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Jason Brown's *Motion to Dismiss Indictment Due to Violation of the Speedy Trial Act and the Sixth Amendment Right to a Speedy Trial* (Doc. 86) is **DENIED.**

Signed in Baton Rouge, Louisiana, on <u>April 8, 2024</u>.


 

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**